UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHEN. W.[1]  Case No. 2:23-cv-1473

        Plaintiff,
v.  Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Stephen W. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  See 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned magistrate judge.  See 28 U.S.C. §636(c). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is REVERSED and REMANDED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits (DIB) in July 2018, claiming disability beginning on January 8, 2018. (Tr. 156-57). His application was denied initially and upon reconsideration. (Tr. 68-72, 82-72). After a hearing, the ALJ issued an unfavorable decision, dated June 28, 2020, finding that Plaintiff was not under a disability

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  See General Order 22-01.

as defined in the Social Security Act. Plaintiff appealed that decision to the United States District Court of South Carolina, which remanded the case to the Commissioner upon her motion. (Tr. 756). In May 2022, the Appeals Council remanded the case to the ALJ. (Tr. 769-70). Following a supplemental hearing, in January 2023, ALJ LaFata found Plaintiff disabled beginning May 4, 2021. (Tr. at 607-25).

The ALJ concluded that, prior to May 4, 2021, Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work with postural and environmental limitations (Tr. 612). At step four, the ALJ concluded that Plaintiff could perform his past relevant work. (Tr. 622). However, beginning May 4, 2021, Plaintiff was reduced to sedentary work and became disabled. (Tr.621, 625).

Plaintiff was born in December 1960 and was 57 years old when he filed his application for benefits, and he was 60 years old, on May 4, 2021, when the ALJ found that he was disabled. (Tr. 625). Plaintiff completed high school and some college level courses. (Tr. 176, 554). He has past relevant work in auto-dealerships as a service advisor, service manager, and parts and service director. (Tr. 176-77, 206-09, 235-38).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine and degenerative joint disease/osteoarthrosis of the right hip." (Tr. 609). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that prior to May 4, 2021, the date Plaintiff became disabled, Plaintiff retained the RFC to perform light work subject to the following limitations:

2

>occasional climbing ramps/stairs; no climbing ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; no work at unprotected heights or concentrated exposure to extreme cold; and, occasional operation of a motor vehicle. He would need a sit/stand option, defined as a brief postural change at or near the work station, no more frequently than up to twice in an hour and lasting for no more than up to 5 minutes each. Time off-task can be accommodated by normal breaks.

(Tr. 612).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that prior to May 4, 2021, the Plaintiff was capable of performing his past relevant work of service manager and parts manager. (Tr. 622). Accordingly, the ALJ determined that Plaintiff is not under disability prior to May 4, 2021, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.* Beginning May 4, 2021, Plaintiff was reduced to sedentary work and found to be disabled. (Tr. 621, 625).[2]

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly evaluating Plaintiff's RFC; (2) improperly evaluating the opinion of Dr. Durrence; and (3) failing to properly consider Plaintiff's subjective complaints. Upon close analysis, I conclude that Plaintiff's assignments of error are well-taken.

**I.    Analysis**

---

[2] Since May 4, 2021, the ALJ determined that Plaintiff has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

>occasional climbing ramps/stairs; no climbing ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; no work at unprotected heights or concentrated exposure to extreme cold; and occasional operation of a motor vehicle. He would need a sit/stand option, defined as a brief postural change at or near the work station, no more frequently than twice in an hour lasting for no more than 5 minutes each. Time off-task can be accommodated by normal breaks.

(Tr. 621).

3

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits

4

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is not supported by Substantial Evidence

Plaintiff's asserted errors each stem from the main assertion that the ALJ's RFC assessment for the period from the alleged onset date of January 8, 2018, to May 4, 2021, the established onset date, is not supported by substantial evidence. In this regard, Plaintiff argues that the ALJ failed to build a logical bridge from the objective medical evidence to his finding that Plaintiff can perform light work. More specifically, Plaintiff

argues, inter alia, that the ALJ improperly discounted the findings of his treating physician and improperly evaluated his subjective complaints pain. Accordingly, Plaintiff argues that the ALJ's failure to state a clear basis for his RFC finding for the period prior to May 4, 2021, warrants remand. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017). As outlined below, the undersigned finds that the ALJ's evaluation of the opinion evidence is not supported by substantial evidence.

*1. Dr. Durrence.*

Plaintiff argues that the ALJ's RFC finding is not substantially supported because he improperly evaluated the opinion of Dr. Durrence, Plaintiff's treating physician. The undersigned agrees.

Notably, at step- four the ALJ determines a claimant's RFC. The RFC is the "most [an individual] can still do despite [his physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish his RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability.").

Here, in finding that Plaintiff could perform light work prior to May 4, 2021, the ALJ credited the opinions of State agency medical consultants, Drs. Heldrich and Thomson. (Tr. 619). The state agency consultants reviewed the record evidence in November 2018

and October 2019 respectively and opined that Plaintiff could perform light work. He could never climb ladders, ropes and scaffolds but perform all other postural limitations occasionally. He should avoid extreme colds and hazards. (Tr. 619). Thus, in formulating Plaintiff's RFC, the ALJ determined that their opinions are persuasive because the state agency consultants' offered support for their findings, cited objective findings and clinical signs from the record as constituted at the time their findings were made. In this regard, the ALJ determined:

> Although additional evidence has been submitted since that time, that evidence does not support a finding that the claimant's condition is materially different now than it was at the time the findings were made. For an example, the record demonstrates that the claimant had degenerative changes of hips and lumbar spine but his treatment has been conservative. The claimant treated with injections, physical therapy and pain management that was effective. During follow-ups, the claimant admitted to having 50% improvement with injection and up to 80% with medication. The claimant underwent two surgical consultations in 2017 and both neurosurgeons, ultimately, recommended continuing conservative treatment. Moreover, his physical examinations were mostly normal. On occasion, his lumbar spine was tenderness to palpation of the left lower back, he decreased range of motion and his gait was moderately antalgic, but otherwise, he had no radiculopathy and his straight leg test was normal. His heel and toe walk were normal. His cranial nerves were intact, his motor and sensory exam were normal and deep tendon reflexes were 2+. His extremities had no deformities, clubbing, cyanosis or edema. He had no focal deficits, a normal gait and 5/5 strength. Thus, the findings remain consistent with the medical and other evidence as a whole. Additionally, the undersigned notes that, although these consultants have no treating or examining relationship with the claimant, they are well familiar with program rules and the expected limitations of impairments. That being said, the undersigned has included limitations for time off task, driving limitations and sit/stand option to better account for the claimant's combined impairments.

(Tr. 619)(internal citations omitted).

In formulating Plaintiff's RFC, the ALJ also considered the opinion of Dr. Durrence Plaintiff's treating physician, finding that his opinions were not persuasive. (Tr. 617).

7

Notably, Plaintiff treated with Dr. Durrence from October 2018 though January 2020. (Tr. 403-06, 407-18, 485, 509-17, 520-29). On a Work Sheet dated November 1, 2018, Dr. Durrence opined that due to Plaintiff's pain symptoms that worsened with activity, he was unable to work at full duty or modified duty jobs and was limited to occasionally sitting, standing, walking, reaching/handing, or lifting 10 pounds; but he could never climb/balance, stoop/kneel, crouch/crawl. (Tr. 485).  In June 2019, Dr. Durrence reported that Plaintiff had severe low back pain, significant paraspinal tenderness, and a straight leg test reproduced pain bilaterally. He also experiences pain, numbness and tingling in the right leg. He is unable to bend, twist, kneel, squat, lift heavy objects, push or pull, stand or sit for an extended period of time without having to change positions. Dr. Durrence concluded that Plaintiff would not be able to sustain the physical demands of work at any level of skill or exertion on a regular and continuing basis. (Tr. 506).

With respect to Dr. Durrence's findings, the ALJ found in relevant part:

> Dr. Durrence's opinion is not persuasive, as it is inconsistent with the overall record and clinical exam findings noted herein. The record demonstrates that the claimant has degenerative changes of hips and lumbar spine, but his treatment has been conservative. The record notes that the claimant has had some injections, physical therapy and pain management that was effective during the relevant period. The claimant reported 50% improvement with injections and up to 80% improvement with medication. After surgical consultations in June 2017 and August 2017, the examining specialist recommended conservative treatment. Moreover, physical examinations have been mostly normal. On occasion, his lumbar spine showed some tenderness to palpation decreased range of motion and moderately antalgic gait, but otherwise, he had no radiculopathy. His heel and toe walk were normal, cranial nerves were intact, motor and sensory exam were normal and deep tendon reflexes were 2+. His extremities had no deformities, clubbing, cyanosis or edema. He had no focal deficits, a normal gait and 5/5 strength. This evidence is inconsistent with the need for a limitation to sedentary work or the very restrictive postural and manipulative limitations assigned by Dr. Durrence for the relevant period prior to the established onset of disability date.

(Tr. 617) (internal citations omitted).

Plaintiff argues that the ALJ's evaluation of Dr. Durrence fails to comport with Agency regulations and controlling law and is therefore not supported by substantial evidence. The undersigned agrees.

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017 (Tr. 161). See 20 C.F.R. § 404.1520c. The new regulation at 20 C.F.R. § 404.1520c differs from the previous regulation at 20 C.F.R. § 404.1527. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).

Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(a), (b). The ALJ is only required to explain how he or she considered the supportability and consistency factors, 20 C.F.R. § 404.1520c(c)(1)-(2), which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2).

Supportability now focuses on the provider's explanations for his or her opinions, and includes whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R.

9

§ 416.920c(c)(1). The consistency factor is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he or she considered medical opinions. See 20 C.F.R. § 404.1520c(b)(2)-(3). Further, in evaluating the statements from the state agency reviewing sources, an ALJ will also consider the evidence in accordance with the new regulations. See 20 C.F.R. §§ 404.1513a(b)(1)(2017), 404.1520c.

Plaintiff contends that the reasons given by the ALJ for not crediting Dr. Durrence's opinions are not supported by the record. Namely, the ALJ noted that Plaintiff reported 50% improvement with injection and up to 80% with medication. (Tr. 617). However, the complete record states that the injections only provided "50% relief" for "2-3 days." (Tr. 478, 479). The record also indicates that the injections were ineffective. See (Tr. 342) (note dated December 29, 2017, stating Mr. Williams had two injections "[without] help"); (Tr. 338) (note of January 8, 2018, stating that Mr. Williams had two injections "without improvement"); (Tr. 484) (note of March 6, 2018, referencing a referral to a "pain specialist with little to no relief from epidurals"); (Tr. 1118-19) (note dated May 2021 indicating no relief from injections). Plaintiff further notes that the ALJ's rationale appears to cite to an April 2018 note indicating that "[t]he relief the medication provides is 70-80%" with no side effects. (Tr. 372). However, this note goes on to state that "[t]he duration of the effect of the medication is 3-4 hours." Id.

10

The ALJ also discounted Dr. Durrence's opinion, in part, because Plaintiff received only conservative treatment. Plaintiff, however, asserts that ALJ misinterprets the record relating to Plaintiff's treatment. In this regard, Plaintiff notes that the record indicates that Dr. Poletti reported on August 16, 2017, that he would "most likely going to end up having surgery." (Tr. 336). In April 2018 Dr. Tavel reported that Plaintiff "has failed to respond to at least 6 weeks of the following conservative and non-operative treatments within the last 3 months: NSAIDs[,] Narcotics[,] Muscle Relaxants[, and] Physician-guided home exercise program." (Tr. 373). Plaintiff further noted that he testified that he began seeing surgeons again in 2020, not due to a worsening in his condition, but due to the fact that he had insurance coverage again. (Tr. 682-85).

Notes from March 2021, indicate that Plaintiff reported he had no improvement with PT which worsened his symptoms. (Tr. 1123). Plaintiff underwent a transforaminal epidural steroid injection in April 2021 and in May, he rated his pain at 9, and stated he received no relief from the injection. (Tr. 1112, 1118-19). (Tr. 1106). In light of the foregoing, Plaintiff contends that the ALJ improperly determined that his treatment regimen was conservative. *See Brewer v. Astrue*, No. 5:09–CV–3023, 2011 WL1304889, at *6 (S.D. Ohio Apr. 1, 2011) ("[The Commissioner's] characterization of Plaintiff's treatment as conservative is somewhat misleading. After [Plaintiff's] surgery, she continued to take strong narcotic pain medication, participated in physical therapy, entered a pain management program, and received a series of pain injections to control her symptoms.").

Furthermore, the ALJ also found that Plaintiff's physical exams were mostly normal, he [had] decreased range of motion and his gait was moderately antalgic, but

11

otherwise, he had <u>no radiculopathy</u>. (Tr. 617) (emphasis added). However, as noted by Plaintiff, the record contains numerous mentions of Plaintiff's radiculopathy. (See Tr. 372-73, 375-76, 377, 379, 409, 413, 417, 478, 479, 481, 484, 1146). Dr. Weissglass reported on December 29, 2017, that Mr. Williams had right lower extremity weakness and his "[r]ight leg gives out from under him." (Tr. 342). On exam, he walked with a "moderately antalgic gait"; had a positive straight leg raising test "with pain in the back with right leg extension and pain in the back with left leg extension"; and his lumbar range of motion was abnormal with "anteflexion decreased and extension decreased a lot and causes flare or radicular pain." (Tr. 344-45). In October 2018, Dr. Durrence stated "a straight leg test reproduced pain bilaterally" with "numbness and tingling in the right leg" and was "unable to bend, twist, kneel, squat, lift heavy objects, push or pull, stand or sit for an extended period of time without having to change positions." (Tr. 506).

The Court recognizes that the ALJ reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, in assessing a claimant's RFC, the ALJ must consider all relevant evidence of record, including medical source opinions discussing the severity of a claimant's impairments. See 20 C.F.R. §§ 404.1527(d), 404.1545(a). The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making such determination, the ALJ, in part, impermissibly acted as his own medical expert. See *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975). As detailed above, while an ALJ is free to resolve issues of credibility as to lay testimony,

12

or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations (or misinterpretation) of the medical findings.

Moreover, as a rule, an ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); see also *Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Com'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999) (Table); see also *Hurst v. Sec'y of HHS*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). Here, as outlined above, the ALJ's rationale for rejecting Dr. Durrence's findings does not build an accurate bridge between the evidence of record and his conclusion and therefore did not properly address the supportability or consistency factor outlined in 20 C.F.R. § 404.1520c(b)(2).

In light of the foregoing, the undersigned finds that the reasons given by the ALJ for crediting the state agency consulting and for disregarding Dr. Durrence's findings are not supported by substantial evidence. As such, remand is warranted for further fact-finding.

*2. Remaining Errors*

Plaintiff's statement of errors further asserts that the ALJ: (1) failed to provide support for the finding that from January 8, 2018, until May 4, 2021, Plaintiff could perform light work; (2) failed to comply with the South Carolina court's remand order; (3) failed to

13

comply with SSR 18-01p in finding that Plaintiff became disabled on May 4, 2021, but not prior thereto; (4) failed to properly evaluate Plaintiff's RFC prior to May 4, 2021; and (5) failed to properly evaluate Plaintiff's subjective complaints of pain.

The majority of Plaintiff's remaining errors are cumulative. Moreover, finding error in the ALJ's analysis of Dr. Durrence's opinion, the undersigned will not address the merits of the remaining alleged errors and, instead, instructs the ALJ to address all of them on remand.

### III. Conclusion and Order

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place*." Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four for further proceedings consistent with this opinion.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge